JEFFREY OTTOW AND SHARON OTTOW, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ottow v. Commissioner
Docket No. 236-93
United States Tax Court
T.C. Memo 1994-319; 1994 Tax Ct. Memo LEXIS 328; 68 T.C.M. (CCH) 60; July 13, 1994, Filed *328 Decision will be entered under Rule 155 Jeffrey Ottow and Sharon Ottow, pro se. For respondent, Michael J. Calabrese. PARKER PARKER MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Additions to Tax
Year
Deficiencies
Sec. 6653(a)(1)
Sec. 6662(a)
1988
$ 3,666
$ 183
-0-
1989
2,946
-0-
$ 589
1990
4,066
-0-
813
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years before the Court, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions by both parties, [1] the issues for decision are (1) whether the portions of the Schedule C expenses and depreciation deductions allocable to the horses owned by petitioners are ordinary and necessary business expenses of their horse-boarding business, and (2) whether petitioners are liable for the negligence addition to tax or the accuracy-related penalty for the years at issue. *329 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners Jeffrey Ottow and Sharon Ottow are husband and wife and, at the time of filing their petition in this case, resided in Mukwonago, Wisconsin. During 1988, 1989, and 1990 and for some 11 to 12 years prior thereto, petitioners had operated a horse-boarding business called Heather Ridge Stables. When petitioners first began their horse-boarding business, they did not own any horses of their own. They found that prospective customers routinely asked about their horses and were concerned that petitioners did not own any horses. Petitioners discovered that prospective customers liked to examine the stable owner's own horses as a means of judging the quality of care given to the animals. Petitioners talked with other operators of horse-boarding businesses and learned that it was common practice for the operator of a stable to maintain his or her own horse with the boarded horses. Thus, within a short time after beginning their horse-boarding business, petitioners purchased horses of their own and have *330 owned one or two horses since those early years of the business. Petitioners gained knowledge and on-the-job training from their own horses and from the boarded horses in their care, and Health Ridge Stables gained a reputation as a well-operated stable. Petitioners did not show their own horses or hunt with them'. Their horses served as an example of how petitioners cared for animals in their stables. During the years before the Court, petitioners' daughters, Tammy and Wendy, were approximately aged 15 through 18 and 12 through 15, respectively. Tammy and Wendy were not interested in riding and did not ride the horses during that period. Their riding days had occurred at earlier ages and in an earlier period from 1977 through 1985. [2] Tammy rode during the period of roughly 1977 to 1980. Wendy rode during the period of roughly 1982 to 1985. During the years before the Court, neither petitioners nor their daughters rode their horses for pleasure. During those years the horses were retained and-cared for solely for their educational or public relations value and as reassurance to other horse owners who were current or prospective customers of Heather Ridge Stables. *331 During 1988 and 1989, petitioners owned and stabled two horses at Heather Ridge Stables and during 1990 one horse. [3] During all 3 years, petitioners boarded eight other horses for other horse owners. The costs of boarding and caring for petitioners' own horses were not separately accounted for or segregated from the expenses of the horses owned by others. The Schedule C business expense and depreciation deductions remaining in dispute all relate to petitioners' horses (i.e., 2/10th of such expenses and depreciation deductions for 1988 and 1989 and 1/9th of such expenses and depreciation deductions for 1990). Specifically, the following deducted amounts relating to petitioners' two horses in 1988 *332 and 1989 and petitioners' one horse in 1990 remain in dispute: 1988 1989 1990 Depreciation
$ 798
$   638
$ 336
Repairs & supplies
315
280
232
Car & truck
158
254
145
Bedding & hay
310
310
172
Utilities
229
220
94
Feed
958
1,023
353
Veterinarian
- 618
- For each of the years before the Court, petitioners had their Federal tax returns, including the Schedules C, prepared by their long-time Certified Public Accountant (C.P.A.). Petitioners took their receipts, invoices, canceled checks, and other records to the C.P.A., who prepared their returns using those materials. Petitioners apparently neither explained those materials to their C.P.A. nor were asked by the C.P.A. to explain any of the items, at least none of the items that were disallowed in this case. OPINION I Horse-Boarding Business
This case involves a horse-boarding business called Heather Ridge Stables. Petitioners are not engaged in horse breeding, horse racing, or horse showing activities of any kind. Unlike the usual cases of such horse activities, here there is no issue as to petitioners' profit objective under section 162(a) and section 183. See ; *333 affd. without opinion . Respondent agrees that Heather Ridge Stables is a bona fide trade or business and that the ordinary and necessary expenses and depreciation allowances of that business are deductible under section 162(a) and section 167(a). Respondent challenges only those portions of the expenses and depreciation deductions that are allocable to the one or two horses owned by petitioners and stabled at Heather Ridge Stables during the years at issue. Normally, the expenses of owning and stabling a.horse would be personal, living, or family expenses and nondeductible under section 262; That may well have been the case in those earlier years when petitioners' daughters were interested in riding and actually rode the horses. [4] The critical factor in this case is that there was no personal use of the horses at all during the years before the Court. *334 There also were good business reasons for petitioners' owning and stabling their own horse at Heather Ridge Stables. Shortly after they opened the business, they found that prospective customers asked them about their own horse. The prospective customers who were considering boarding their horses at petitioners' stables wanted to look at petitioners' own horse to judge the quality of care provided by the stable. Many prospective customers expressed a reluctance to board their animals at a stable unless the owner/operator of that stable had his or her own horse there as well. Besides the public relations value and reassurance given to the owners of boarded horses, petitioners' ownership of horses also provided a valuable learning experience and training for operation of the boarding stable. The educational value of such personal horse ownership may have diminished over the years as petitioners gained knowledge and on-the-job training from their own horses and from the boarded horses in their care, but it had not totally vanished by the years 1988 through 1990. Based on the particular facts and circumstances of this case, the Court concludes that, at least for the years before *335 the Court, there were good business reasons for petitioners to own a horse and stable it at Heather Ridge Stables. However, the Court is not persuaded that a second horse was necessary for business purposes, considering the small size of petitioners' boarding operation, with only 10 stables. The presence of a second horse probably harkened back to the days when each of their daughters in turn became interested in riding. Therefore, we sustain respondent's disallowance of 1/10th of the horse-boarding expenses for 1988 and 1989, hold for petitioners as to the balance of the expenses for those years, and hold for petitioners for 1990 when they owned only the one horse. II Negligence
For the taxable year 1988, section 6653(a) provides an addition to tax for negligence or disregard of rules or regulations. For the taxable years 1989 and 1990, section 6662(a) imposes a penalty on any portion of an underpayment that is attributable to negligence or disregard of rules or regulations. The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and the term "disregard" includes any "careless, reckless, or intentional *336 disregard". This Court has defined negligence as a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. . Respondent's determination of additions to tax or penalties is presumptively correct, and petitioners bear the burden of establishing otherwise. Rule 142(a); . While we have ruled against petitioners as to one of the two horses in 1988 and 1989, we think the issue is sufficiently factually complex and close that we cannot conclude that petitioners were negligent in claiming both horses. However, there are other possible bases for finding negligence in this case, such as the failure to substantiate certain amounts claimed and, more importantly, the improper deduction of certain items of personal, living, or family expenses. Petitioners assert that they were not negligent and that they properly relied upon their C.P.A. to prepare proper tax returns. Petitioners state that they took their records to the C.P.A. and that he prepared the returns from those materials. *337 However, the C.P.A. apparently abandoned them during the audit and kept some of their records in a fee dispute. Petitioners did not have a real opportunity to complete the audit or to try to substantiate the various items disallowed. [5] Thus, we conclude that the failure to substantiate certain items during the audit is not necessarily an indication of negligence. The Court is, however, concerned about certain improper deductions of personal items -- deducting the electric expense of their home which was on a separate meter from the horse-boarding stable, deducting their tax return preparation fees and those of their children as stable expenses, and deducting Wendy's travel expense as a stable expense. [6] The underpayments of tax attributable *338 to these improper deductions are subject to the negligence addition to tax under section 6653(a)(1) for 1988 and the accuracy-related penalty under section 6662(a) for 1989 and 1990. *339 To reflect the concessions and the above holdings, Decision will be entered under Rule 155. Footnotes
1. The parties have executed and filed a Partial Stipulation of Settled Issues in which respondent has conceded the interest expense adjustment of $ 4,954 for 1990, and both parties have conceded various Schedule C expenses of the horse-boarding business. Some of the expense items conceded by petitioners were conceded because of lack of substantiation or because they represented personal, nondeductible expenditures. All of the portions of Schedule C expense and depreciation deduction amounts still remaining in dispute relate to the horses owned by petitioners.↩
2. Respondent was under the understandable but erroneous impression that the daughters rode the horses during the 3 years involved in this case. The Court has no doubt that, as the revenue agent testified, Mrs. Ottow told her that she (Mrs. Ottow) kept the horses for her daughters. As the Court observed, Mrs. Ottow was confused as to exactly when and for what periods of time her daughters had ridden the horses. It is difficult to keep track of the stages of one's children's interests, as shown by the difficulty both parents had in reconstructing the events when asked by the Court to do so.↩
3. The Court is mindful that the more horses the stable owner/operator owns and stables in the facility, the less likely that the stable will constitute a bona fide horse-boarding business operation. However, there is no indication that petitioners ever owned more than two horses, and by 1990 they owned just one horse.↩
4. Had the daughters been riding the horses during the years before the Court, the outcome of this case would probably be different. In that situation, it would be exceedingly difficult, if not impossible, to separate the personal use of the horses from any business purpose.↩
5. During the audit of their tax returns, petitioners were able to substantiate only $ 1,402 of the $ 3,109 claimed for repairs and supplies in 1989. For the year 1989, petitioners were able to substantiate only $ 1,550 of the $ 1,831 claimed for bedding material and hay.↩
6. Petitioners had separate electric meters for their home and for their horse stable. However, for all 3 years at issue, petitioners deducted as part of the horse-boarding business the entire amount of the electric cost for both the horse stable and their residence. On their 1989 Schedule C for the horse-boarding business, petitioners deducted an amount of $ 1,444 for advertising. However, included in that figure was a $ 150 payment to Lakeland Tours for travel by petitioners' daughter Wendy and a $ 425 payment to accountants for their tax return preparation. Petitioners concede respondent's disallowance of the $ 575 portion of the advertising deduction. For 1990 petitioners deducted on their Schedule C legal and professional fees in the amount of $ 685. Those expenditures did hot relate to the horse-boarding business but were fees for preparing their joint income tax return ($ 550), their daughter Tammy's return ($ 92), and their daughter Wendy's return ($ 43). Petitioners have conceded this disallowance.↩